IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ORLANDO MARCELL McDONALD PLAINTIFF

v. Civil No. 2:20-cv-02098

DEPUTY TREVOR MASSEY;
SERGEANT KIM TAULBEE; and
NURSE COLLEEN MONTGOMERY DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This is a civil rights action filed by Plaintiff, Orlando M. McDonald ("McDonald"), pursuant to 42 U.S.C. § 1983. McDonald proceeds *pro se* and *in forma pauperis.* McDonald is incarcerated in the Sebastian County Detention Center ("SCDC").

This case is before the Court on the Motion to Dismiss (ECF No. 17) filed by Separate Defendant Nurse Colleen Montgomery. McDonald has filed a Response (ECF No. 31) to the Motion. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable P. K. Holmes, III, United States District Judge, referred the instant motion to the undersigned for the purpose of making a Report and Recommendation.

## I. BACKGROUND

On December 5, 2019, McDonald arrived at the SCDC with an arm injury and "stitches 3 inside and 7 outside with paperwork from the doctor saying he needed to see a specialist within seven days." (ECF No. 1 at 6). On January 9, 2020, McDonald indicates that Deputy Massey served as the "medical deputy" and was certified as an emergency medical technician. *Id.* at 5. Despite the fact that both McDonald and Nurse Debra Diaz protested, Plaintiff alleges that Deputy Massey took it upon himself to cut the anchor stitch in McDonald's arm. *Id.* at 4, 9. McDonald asserts that the "stitch retracted back into my arm and for almost 4 months it poked my ligaments

and nerves causing excruciating pain." *Id.* McDonald alleges that Deputy Massey violated his "right to humane treatment, proper medical, and to a safe environment." *Id.* at 5, 9. As a result, McDonald alleges he has suffered extreme stress, nightmares, weight loss, and paranoia making his Post Traumatic Stress Disorder ("PTSD") worse. *Id.* at 4.

McDonald alleges Nurse Montgomery is the head nurse and that she failed to coordinate with Turn Key, the medical contractor, in order to ensure he was quickly taken to a specialist when he was first booked into the SCDC. (ECF No. 1 at 5). According to McDonald, Turn Key initially denied his appointment saying he had to pay over $100 to be seen. *Id.* at 6. McDonald indicates his first appointment was not until January 17, 2020, or 43 days after his arrival. *Id.* As a result, McDonald maintains he "never got the stitches inside [his] arm properly removed" until May 7, 2020.[1] *Id.* at 5. Due to Nurse Montgomery and Deputy Massey, "and their respective companies they work for," McDonald alleges he "suffered constant excru[c]iating pain for almost 4 months." *Id.*

McDonald also alleges that on March 25, 2020, and May 18, 2020, Nurse Montgomery falsified documents. (ECF No. 1 at 6). After he submitted a grievance regarding Deputy Massey cutting a stitch, McDonald contends that on March 25, 2020, Nurse Montgomery reported to regional staff that Deputy Massey did not remove any of McDonald's sutures—Nurse Diaz did. *Id.* at 6-7, 9. On May 18, 2020, McDonald alleges Montgomery changed the story indicating that it was Nurse Georgia who cut the stitches. *Id.* According to McDonald, Nurse Georgia cut all his stitches except for the anchor stitch which Deputy Massey cut incorrectly causing him pain and suffering. *Id.* at 6.

[1] McDonald attaches a medical record showing he was seen at Mercy Hospital for removal of sutures on January 17, 2020. (ECF No. 1 at 11). Further, in a grievance dated May 16, 2020, McDonald indicates the anchor stitch was removed by Mercy Hospital on January 17, 2020. *Id.* at 22.

With respect to Sergeant Taulbee, McDonald alleges she was "derelict" in her duty with respect to his paper grievances having lost or destroyed them, including one complaining about "deputy being racist" and the one complaining about Deputy Massey cutting his anchor stitch. (ECF No. 1 at 8). Further on January 24, 2020, Sergeant Taulbee talked with Plaintiff and then tore up four grievances saying she would personally handle them. *Id.* The other grievances they discussed that day cannot be located "because they weren't filed on record at all." *Id.*

## II. APPLICABLE STANDARD

Rule 8(a) contains the general pleading rules and requires a complaint to present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "In order to meet this standard and survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotations omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft,* 556 U.S. at 678. While the Court will liberally construe a *pro se* plaintiff's complaint, the plaintiff must allege sufficient facts to support his claims. *Stone v. Harry,* 364 F.3d 912, 914 (8th Cir. 2004).

## III. DISCUSSION

McDonald indicates he is asserting two claims against Nurse Montgomery, a denial of medical care claim and a falsifying state documents claim. (ECF No. 1 at 5-6).

### A. Denial of Medical Care Claim

The Eighth Amendment's prohibition against cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge Cty*, 684 F.3d

808, 817 (8th Cir. 2012). The Eighth Amendment deliberate indifference standard applies to all denial of medical care claims including those by a pretrial detainee. *Carpenter v. Gage*, 686 F.3d 644, 650 (8th Cir. 2012). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

Nurse Montgomery contends no plausible claim has been stated against her because: she was not involved in removing McDonald's stitches; the stitches had been removed before she became involved in any of the alleged facts; and, a delay in the removal of the stitches did not constitute an objectively serious medical need.

"Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of [a] supervisory defendant[], [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007).

The Court agrees no plausible claim is stated against Nurse Montgomery for the removal of the stitches; however, McDonald also alleges Nurse Montgomery failed to ensure that he was seen by a specialist within seven days. Instead, he contends he waited 43 days to see Dr. Kelly. Further, McDonald maintains he was told he had to pay over $100 to be seen. At least during the time period from January 9, 2020 (the date Deputy Massey removed the anchor stitch) and January 17, 2020 (when he was seen at Mercy Hospital), McDonald alleges he was in excruciating pain. These allegations are sufficient to state a plausible claim against Nurse Montgomery.[2]

[2] Nurse Montgomery reads the Complaint as also asserting a medical malpractice claim under Arkansas state law. The Court does not read the Complaint to be asserting a state law medical malpractice claim.

**B. Official Capacity Claims**

Nurse Montgomery also contends the official capacity claim is subject to dismissal. The Court agrees.

Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In this case, McDonald's official capacity claim against Nurse Montgomery is treated as a claim against Sebastian County. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Sebastian County's liability under § 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). The Complaint is devoid of allegations suggesting the existence of any such policy or custom, so Plaintiff has failed to allege an official capacity claim.

**C. Falsifying Records Claim**

Nurse Montgomery maintains that at most she provided the wrong identity of the nurse removing the stitches in a report to the regional manager, which she later corrected. She maintains no plausible claim is asserted. The Court agrees that no plausible denial of medical care claim is asserted based on the alleged erroneous identification of the nurse who removed McDonald's sutures. McDonald's claim, however, it that Nurse Montgomery's action adversely affected the SCDC's investigation into his grievance about Deputy Massey's actions.

"The filing of a prison grievance . . . is protected First Amendment activity." *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007). Thus, "actions taken in retaliation for an inmate's

filing of a grievance are actionable under 42 U.S.C. § 1983." *Nelson v. Shuffman*, 603 F.3d 439, 450 (8th Cir. 2010). To establish a retaliation claim, McDonald must prove "(1) he engaged in a protected activity, (2) [Nurse Montgomery] took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Spencer v. Jackson Cty.*, 738 F.3d 907, 911 (8th Cir. 2013) (quotation omitted).

McDonald has failed to state a plausible retaliation claim. Even assuming Nurse Montgomery's statements resulted in the denial of McDonald's grievance, the mere denial of a grievance does not state a substantive constitutional claim. *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002). McDonald does not allege he was prohibited from filing grievances or that Nurse Montgomery's action would chill a person of ordinary firmness from continuing in the activity. In fact, as is evidenced by the complaint and attachments, he continued to file grievances regarding the subject.

Nurse Montgomery also reads the Complaint to be asserting a fraud cause of action under Arkansas law. Under Arkansas law, to establish a cause of action for fraud, the plaintiff must prove: (1) a false representation of a material fact; (2) knowledge that the representation is false or there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and, (5) damage suffered as a result of the reliance. *Burgess v. French*, 263 S.W.3d 578, 581 (Ark. App. 2007). Here, McDonald has not alleged a plausible fraud claim. He has made no allegation of justifiable reliance or resulting damages. In fact, he protested the accuracy of Nurse Montgomery's report.

## IV. CONCLUSION

For the reasons stated, it is recommended that Nurse Montgomery's Motion to Dismiss (ECF No. 17) be **GRANTED IN PART and DENIED IN PART.** Specifically, the Motion should be granted with respect to the following claims: all denial of medical care claims stemming from the removal of the sutures; all official capacity claims; all First Amendment retaliation claims; and, any state law fraud claim. The Motion should be denied as to all other claims.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 2nd day of September 2020.

/s/ *Mark E. Ford*

HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE